IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Theodore LeBlanc, ) | C/A No.: 3:11-2955-CMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| South Carolina Department of Natural ) | |
| Resources d/b/a DNR, ) | |
| ) | |
| Defendant. ) | |
| ) | |

In this employment discrimination case, plaintiff Theodore LeBlanc ("Plaintiff") sues his former employer South Carolina Department of Natural Resources ("DNR" or "Defendant"). Plaintiff alleges sex discrimination, hostile work environment, and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

This matter comes before the court on Defendant's motion for summary judgment filed December 13, 2012, which argues that Plaintiff's Title VII claims should be dismissed as barred by judicial estoppel. [Entry #40]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion is dispositive, this report and recommendation is entered for the district judge's consideration.

I.   Factual Background

According to his amended complaint, Plaintiff's employment at DNR began May 17, 2008 as a Business Manager.  [Entry #27, ¶ 11].  He alleges his Assistant Business Manager, Ms. Sue Manchester, created a hostile work environment by being disrespectful, rude, and continually using abusive language towards him.  *Id.* at ¶¶ 12–13.  He alleges that Manchester would repeatedly curse at him when he assigned her tasks and would refuse to complete the requests or otherwise report to him. *Id.* at ¶¶ 14, 21.  Plaintiff alleges Manchester invaded his personal space by "constantly and repeatedly jabbing her finger in Plaintiff's face." *Id.* at ¶ 20. Plaintiff claims he "tried to engage in conversations with Ms. Manchester regarding her assigned work," but that she would become hostile by using abusive language and "slamming her hand on the desk over and over." *Id.* at ¶ 24.

Plaintiff further alleges that his complaints to his supervisor, Ms. Chantal Rice, were ignored and that she and Manchester worked together to undermine him due to his sex. *Id.* at ¶¶ 26–28.  Specifically, Plaintiff alleges that Defendant overloaded him with job duties impossible to complete, which, together with the alleged hostile work environment, caused him to suffer from severe mental stress. *Id.* at ¶¶ 32–33.  Plaintiff alleges he reported the hostile work environment on January 4, 2010 to DNR Marine Resource Director, Robert Boyles. *Id.* at ¶ 34. Plaintiff states that he informed Defendant "of his medical disability and that he was on medication for it." *Id.* at ¶ 35.  Plaintiff claims that after he reported the alleged hostile work environment and disability,

Defendant wrongfully terminated him due to his sex and in retaliation for making a complaint, citing pretextual reasons. *Id.* at ¶¶ 40–41.

Plaintiff filed a complaint with the South Carolina Human Affairs Commission ("SCHAC"). [Entry #40-3]. After receiving notice of his right to sue, he filed this action on October 31, 2011, seeking actual and punitive damages, attorneys' fees and costs.[1] [Entry #1].

II.     Procedural Background

On December 3, 2012, the undersigned issued a Report and Recommendation ("R&R") [Entry #38] recommending that the court grant Defendant's partial motion to dismiss [Entry #25] Plaintiff's claim for hostile work environment. On December 13, 2012—prior to the expiration of the objection period—the parties jointly requested, and the court granted, a stay of the deadlines pending disposition of Defendant's instant motion for summary judgment. [Entry #39, #41]. The motion for summary judgment having been fully briefed, it is ripe for disposition. For the reasons that follow, the undersigned recommends the district court grant the motion.

III.    Discussion

Defendant filed the motion for summary judgment after learning in discovery in November 2012 [Entry #40-6 at 3] that Plaintiff had, through counsel, filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of South Carolina ("Bankruptcy Court"). Defendant argues that Plaintiff never disclosed his claims against Defendant in his bankruptcy petition, despite having filed a formal

---

[1] Plaintiff also originally named the state of South Carolina as a defendant, but dismissed his claims against the state without prejudice on April 26, 2012. [Entry #12].

3

charge of discrimination prior to filing the bankruptcy petition. Defendant cites to the following timeline in support of its motion:

- 03/12/2010: Plaintiff is terminated from DNR [Entry #40-2, Termination letter]
- 04/27/2010: Plaintiff files his SCHAC charge [Entry #40-3]
- 02/22/2011: Plaintiff files Chapter 7 bankruptcy petition [Entry #40-7]
- 05/31/2011: Bankruptcy Court files Order Discharging Debtor, Discharging Trustee and Closing Case [Entry #40-8]
- 06/13/2011: SCHAC issues its Dismissal and Notice of Right to Sue letter [Entry #40-4]
- 08/02/2011: EEOC issues its Dismissal and Notice of Right to Sue letter [Entry #40-5]
- 10/31/2011: Plaintiff files instant action [Entry #1]

Plaintiff opposes the motion, arguing that Defendant's unclean hands militates against equitable estoppel and that the elements of equitable estoppel are not otherwise satisfied.

A.    Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

4

the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

B.   Analysis

There are two grounds upon which the court may grant summary judgment to Defendant on Plaintiff's Title VII claims. First, Plaintiff lacks standing to pursue these claims, thereby depriving this court of jurisdiction. Second, even if Plaintiff had or otherwise gained standing to pursue these claims, summary judgment is alternatively appropriate based on judicial estoppel.

1.   Lack of Standing

Plaintiff's filing for bankruptcy deprived him of standing to prosecute this action. Although Defendant's motion for summary judgment does not raise the issue of Plaintiff's standing, its failure to raise the issue is irrelevant to the court's consideration of its jurisdiction. Federal district courts are courts of limited subject matter jurisdiction. *United States e555 F.3d 337, 347x rel. Vuyyuru v. Jadhav,* 555 F.3d 337, 347 (4th Cir. 2009). Therefore, "[s]ubject matter jurisdiction cannot be forfeited or waived, and can be

5

raised by a party, or by the court *sua sponte,* at any time prior to final judgment." *In re Kirkland,* 600 F.3d 310, 314–15 (4th Cir. 2010) (citing *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006)).

When a debtor initiates a bankruptcy action, a bankruptcy estate is created that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Fourth Circuit has noted that "[t]he meaning of 'property of the estate' under the [Bankruptcy] Code has been construed 'broadly to encompass all kinds of property, including intangibles.'" *Logan v. JKV Real Estate Servs.,* 414 F.3d 507, 512 (4th Cir. 2005) (internal citations omitted). The "property of the estate" under § 541(a) has "uniformly been interpreted to include causes of action." *Id.* (internal citations omitted). Further, such causes of action are not limited to active lawsuits, but include EEOC charges "and even the underlying facts that might support a discrimination claim." *Robertson v. Flowers Banking Co. of Lynchburg, LLC,* 2012 WL 830097 at *3 (W.D.Va. Mar. 6, 2012), *aff'd* 474 Fed. App'x 242 (4th Cir. 2012) (per curiam); *Brockington v. Jones,* C/A No. 4:05-3267-RBH, 2007 WL 4812205 at *4 (D.S.C. Nov. 28, 2007) (unpublished) (citing *Thomas v. Palmetto Mgmt. Servs.*, C/A No. 3:05-17-CMC, 2006 WL 2623917 at *4 (D.S.C. Sept. 11, 2006) (unpublished), *aff'd,* 234 Fed. App'x 166 (4th Cir. 2007) (district court found that plaintiff's filing of EEOC charge after filing her bankruptcy petition but before the bankruptcy case was closed without ever amending her petition to reflect the EEOC claims supported dismissal of plaintiff's lawsuit)). In light of the foregoing authorities, Plaintiff's SCHAC charge and facts supporting his Title VII claims are property of his bankruptcy estate.

A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. 11 U.S.C. § 521(a)(1). The duty of disclosure is "a continuing one" that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change. *See In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999).  A debtor's "full and complete disclosure is required to preserve the integrity of the judicial function of the bankruptcy courts" because both the court and creditors rely on the accuracy of such disclosures in determining how to proceed in a bankruptcy action. *USinternetworking, Inc. v. Gen. Growth Mgmt., Inc.,* 310 B.R. 274, 282 (Bankr.D.Md.2004) (internal citation omitted). Because Plaintiff's SCHAC charge and related claims constitute property of the bankruptcy estate and because debtors have a continuing affirmative duty to disclose such property, Plaintiff was required to disclose his SCHAC charge and the facts supporting such charge to the Bankruptcy Court.

In filing for bankruptcy, Plaintiff not only created a bankruptcy estate comprised of all his assets and liabilities, he also surrenders the right of control over that estate to the bankruptcy trustee. *Robertson,* 2012 WL 830097 at *4 (citing 11 U.S.C. §§ 323(a), 701; *Richman v. Garza,* 117 F.3d 1414, 1997 WL 360644 at *1 (4th Cir. July 1, 1997) (unpublished table decision)). The Fourth Circuit has declared that "[i]f a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." *National Am. Ins. Co. v. Ruppert Landscaping Co.,* 187 F.3d 439, 441 (4th Cir. 1999).

Furthermore, the trustee's exclusive standing extends to all legal claims constituting assets of the estate, including those that were never disclosed to the bankruptcy court. *See, e.g., Robertson,* 2012 WL 830097 at *4; *Sain v. HSBC Mortg. Servs., Inc.,* C/A No. 4:08-2856-TLW, 2009 WL 2858993 at *5 (D.S.C. Aug. 28, 2009) ("a cause of action becomes a part of the estate whether or not it is disclosed by the debtor")(unpublished). A debtor like Plaintiff may pursue a claim belonging to the bankruptcy estate only if the trustee abandons it pursuant to 11 U.S.C. § 554(a) or if the bankruptcy court exempts it under the applicable exemption scheme. *See Steyr-Daimler-Puch of Am. Corp. v. Pappas,* 852 F.2d 132, 136 (4th Cir. 1998) (requiring "before the debtor or a creditor may pursue a claim, there must be a judicial determination that the trustee in bankruptcy has abandoned the claim").

Accordingly, when Plaintiff filed for bankruptcy on February 22, 2011, his claims against Defendant (regardless of disclosure or viability) became assets of the bankruptcy estate. Because causes of action, including the SCHAC charge and the facts supporting them, constitute assets of the bankruptcy estate, the bankruptcy trustee had exclusive standing to pursue Plaintiff's Title VII claims against Defendant, regardless of Plaintiff's failure to disclose those claims to the bankruptcy court. Plaintiff's bankruptcy petition did not assert that the claims against Defendant were exempt, and there is no evidence that the bankruptcy trustee abandoned the claims.

For the foregoing reasons, the undersigned recommends the court find that Plaintiff lacks standing to pursue his Title VII claims in this action. *See Marshall v. Honeywell Tech. Solutions, Inc.,* 675 F.Supp.2d 22, 26 (D.D.C. 2009) ("Where nothing in

the record shows that a trustee abandoned a debtor's cause of action, dismissing a complaint brought by the debtor for lack of standing is proper."); *see also Pappas,* 852 F.2d at 136.  In light of Plaintiff's lack of standing to sue, the court should dismiss the complaint for lack of subject-matter jurisdiction." *See Miller v. Pacific Shore Funding*, 92 Fed. Appx. 933 (4th Cir. 2004) (review of district court's dismissal because plaintiffs lacked standing where they had separately filed for bankruptcy and had obtained a discharge prior to the completion of their civil suit).

        2.        Judicial Estoppel

Out of an abundance of caution, the undersigned separately addresses Defendant's judicial estoppel argument. *See Robertson,* 2012 WL 830097 at *4–7 ("out of an abundance of caution" considering judicial estoppel as applied to a plaintiff's failure to disclose her EEOC charge in a prior bankruptcy proceeding after finding that the plaintiff lacked standing). Even if Plaintiff had standing to maintain this action, the doctrine of judicial estoppel would bar his claims, as Defendant argues in its motion. Judicial estoppel is an equitable doctrine, and the decision whether to invoke it is within the court's discretion. *Thomas v. Palmetto*, 2006 WL 2623917 at *2 (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)).

Defendant's argument for judicial estoppel hinges on the uncontested fact that Plaintiff previously filed a voluntary Chapter 7 petition in the Bankruptcy Court on February 22, 2011. [Entry #40-7]. It is further uncontested that Plaintiff failed to list the claims he asserts in this lawsuit as contingent and unliquidated claims in the bankruptcy filing. Defendant argues that, because Plaintiff has previously sworn before the

9

Bankruptcy Court that he did not have any claims against Defendant, the doctrine of judicial estoppel should be invoked to bar him from pursuing these claims against it in this action.

The purpose of the doctrine of judicial estoppel is to protect the integrity of the judicial process by preventing parties from playing "fast and loose" with the courts "to suit the exigencies of self interest." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir.1988). The doctrine of judicial estoppel has been accepted in the Fourth Circuit and in this District and serves to prevent litigants from taking contrary positions in court filings and to "protect the essential integrity of the judicial process." *Thomas v. Palmetto*, 2006 WL 2623917 at *3 (*citing Allen v. Zurich Insurance Co.*, 667 F.2d 1162, 1166 (4th Cir.1982); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1179 (D.S.C. 1975)).

The Fourth Circuit has adopted the following four-prong test to determine whether judicial estoppel should be applied: 1) the party to be estopped is advancing an assertion that is inconsistent with a position taken during previous litigation; 2) the position is one of fact instead of law; 3) the prior position was accepted by the court in the first proceeding; and 4) the party to be estopped has acted intentionally, not inadvertently. *Folio v. City of Clarksburg*, 134 F.3d 1211, 1217 (4th Cir. 1998). Plaintiff argues in his response that he did not make an inconsistent statement of fact and that he did not "intentionally mislead the court to gain an unfair advantage." [Entry #46 at 5–8]. There is no dispute that Plaintiff's prior position was accepted by the Bankruptcy Court in the prior proceeding.

10

The doctrine of judicial estoppel is generally inapplicable when a prior position was taken because of a good faith mistake or genuine inadvertence. *See Ryan Operations, G.P. v. Santiam–Midwest Lumber Co., et al.*, 81 F.3d 355, 362–363 (3d Cir.1996). However, in the context of a bankruptcy proceeding, a debtor's failure to satisfy his statutory disclosure duty is inadvertent "only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *In re Coastal Plains*, 179 F.3d at 210; *Brassfield v. Jack McLendon Furniture, Inc.,* 953 F.Supp. 1424, 1433 (M.D.Ala. 1996) (in Chapter 7 case, where claims accrued after filing petition, and where debtor was not aware of claims during bankruptcy, debtor not judicially estopped from asserting unscheduled claims).

Defendant points out that Plaintiff obviously knew of his claims because he filed his administrative SCHAC charge of discrimination on April 27, 2010, and then subsequently filed this lawsuit on October 31, 2011, all without ever either first disclosing these claims or timely amending his bankruptcy filings to reflect these claims at any point during the pendency of his bankruptcy action.

Plaintiff argues that "he did not make an inconsistent statement of 'fact,' because whether or not a 'claim' exists is a legal judgment, and not a statement of fact." [Entry #46 at 5]. Plaintiff argues that at the time of his bankruptcy filing, he had only filed an EEOC charge and that "within the EEOC process, there is no 'Claimant,' but rather a 'Complainant,' or 'Charging Party,' so a layperson might reasonably conclude that the charge of discrimination is not a 'claim' at all." *Id.* Plaintiff's argument, while creative, does not pass legal muster. As Defendant notes in its reply, all that is required is a

11

showing that Plaintiff knew of the factual basis of the undisclosed claim, not that a charge of discrimination or even a lawsuit had been filed prior to or during his bankruptcy. Because Plaintiff admittedly had already filed a charge of discrimination prior to filing his bankruptcy petition, his knowledge of the undisclosed claims is readily apparent. Similarly, Plaintiff's argument concerning the difference between terms such as claimant, complainant, or charging party, is likewise unavailing, especially considering Plaintiff was represented by counsel during his bankruptcy proceedings.  A charge of discrimination before the EEOC or its deferral agencies equates to an administrative proceeding, about which Plaintiff was specifically asked as part of his bankruptcy declarations. *See Chandler v. Samford Univ.*, 35 F. Supp. 2d 861, 865 (N.D. Ala. 1999) (holding "because [the plaintiff] did not disclose her pending EEOC charge despite the schedule's specific instruction that she identify any pending administrative proceedings, it is difficult to credit her claim of ignorance").

Next, Plaintiff argues that he did not intentionally mislead the court to gain an unfair advantage and attempts to distinguish some of the cases Defendant cited by focusing on the relative stages of the bankruptcy and lawsuit claims. [Entry #46 at 6–8]. The undersigned finds these arguments to be unconvincing. As Defendant argues, Plaintiff's motive can be inferred because disclosure of Plaintiff's claims against it denied creditors potential assets. *Calafiore v. Werner Enterprises*, 418 F.Supp.2d 795, 798 (D. Md. 2006) ("If [debtor's] undisclosed claim would have added assets to the bankruptcy estate … [the debtor] will usually be deemed to have had a motive to conceal those claims."). The bankruptcy trustee might have asserted his right to intervene in his

litigation had he been aware of these claims. *DeLeon v. Comear Industries, Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003) (holding that a financial motive to hide assets exists under Chapter 13 because the amount disclosed affects the amount to be discounted and repaid).

Finally, it appears that during the two consent extensions of time granted to him to respond to the motion for summary judgment, Plaintiff petitioned the Bankruptcy Court to reopen his case (nearly two years after the bankruptcy case closed) to amend his schedules to include this lawsuit. [Entry #46 at 6, #46-1]. In addition to the Fourth Circuit, at least eight other appellate courts have considered this issue and also found that a debtor/plaintiff cannot realize a recovery on assets that were concealed until after a bankruptcy case was closed. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (joining six other appellate courts on this issue, the court explained that "[b]y making [litigants] choose one position irrevocably, the doctrine of judicial estoppel raises the cost of lying"); *Eastman v. Union Pacific R. Co.*, 493 F.3d 1151 (10th Cir. 2007); *see Brockington v. Jones*, 2007 U.S. Dist. LEXIS 96248, at *11 (D.S.C. Nov. 28, 2007) ("[a] debtor's failure to list a claim in the mandatory bankruptcy filings is tantamount to a representation that no such claim existed") (quoting *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006)). If the court were to accept Plaintiff's position, it would promote a public policy that encourages nondisclosure unless and until a debtor is caught having concealed assets. *See, e.g., Love v. Tyson Foods, Inc.*, 677 F.3d 258, 265–266 (5th Cir. 2012) (citing *Thompson, supra*, and holding that permitting such corrections after an adversary has pointed them out would "suggest that a debtor should consider disclosing personal assets only if he is caught concealing them"); *DeLeon*, 321 F.3d 1289 at 1291–

13

1292 (rejecting plaintiff's argument that his effort to reopen his bankruptcy estate is evidence that his omission was inadvertent, holding "The success of our bankruptcy laws requires a debtor's full honest disclosure. Allowing [plaintiff] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them."); *see also, Eastman*, 493 F.3d at 1160 (finding discharge in bankruptcy sufficient to apply judicial estoppel, even if the discharge is later vacated, debtor's bankruptcy reopened and creditors made whole after omission became known).

Reviewing the facts of this case in conjunction with the applicable case law, the undersigned finds that the doctrine of judicial estoppel should be invoked in this case to bar Plaintiff's claims against Defendant because he previously represented to the bankruptcy court, under the penalty of perjury, that he had no contingent claims against Defendant. Plaintiff's bankruptcy records show that on February 22, 2011—approximately ten months after filing his SCHAC charge—Plaintiff filed a Chapter 7 bankruptcy petition. [Entry #40-7]. In the petition, which required Plaintiff to identify "contingent and unliquidated claims of every nature," Plaintiff responded with "None." [*Id*. at 6 (Schedule B)]. Under the "penalty of perjury," Plaintiff declared that the information provided in his petition was "true and correct." [*Id*. at 8 (Declaration Concerning Debtor's Schedules)]. In his Statement of Financial Affairs filed in conjunction with his bankruptcy petition, Plaintiff also failed to disclose his current lawsuit in response to the following question:

14

> **4. Suits and administrative proceedings, executions, garnishments and attachments**
> a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. . . .

[*Id.* at 10 (Statement of Financial Affairs) (emphasis in original)]. In response to this question, Plaintiff withheld information about the SCHAC charge he had filed against Defendant ten months earlier.

Plaintiff's bankruptcy records further show that after he made the above representations, on March 30, 2011, the Trustee issued his Report of No Distribution. [Petitioner's Bankruptcy Case: 11-01098-dd].[2] In the report, the bankruptcy trustee declared that he had inquired into Plaintiff's financial affairs and concluded that "there is no property available for distribution from the estate over and above that exempted by law." [*Id.*]. On May 31, 2011, the bankruptcy court issued an order granting Plaintiff a discharge. [Entry #40-8]. The discharge order appears to discharge at least $75,551 in unsecured debts that Plaintiff. [Petitioner's Bankruptcy Case at Entry #1 at 15 (Summary of Schedules)]. Given the above undisputed facts and given the well-established rule that "a debtor in bankruptcy who denies owning an asset, including a . . . legal claim, cannot

---

[2] The court takes judicial notice of its own records. *Anderson v. F.D.I.C.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) ("[T]he Bankruptcy Court is considered 'a unit of the district court' under 28 U.S.C. § 151, and we believe a district court should properly take judicial notice of its own records. . . ."); *Huber v. Marine Midland Bank*, 51 F.3d 5, 9 (2d Cir. 1995) (noting that in prior appeal, the appellate court "instructed the [district] court to take judicial notice of the records in [the plaintiff's] bankruptcy case"); *see Ceo v. Ozmint*, 2006 WL 2850538, at *2 (D.S.C. Sept. 29, 2006) ("This court may take judicial notice of its own records in this prior case.") (citing *Colonial Penn Ins. Co. v. Coil,* 887 F.2d 1236, 1239 (4th Cir. 1989)(". . . '[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.'")).

realize on that concealed asset after the bankruptcy ends," the undersigned finds that judicial estoppel should bar Plaintiff's claims against Defendant. *Cannon-Stokes*, 453 F.3d at 448.

> As stated by the court in *Cannon-Stokes* under similar facts:
>
> The signature on the bankruptcy schedule is [the plaintiff's]. The representation she made is false; she obtained the benefit of a discharge; she has never tried to make the creditors whole; now she wants to contradict herself in order to win a second case. Judicial estoppel blocks any attempt to realize on this claim for her personal benefit.

*Cannon-Stokes*, 453 F.3d at 449.

In sum, the record in this case reflects that Plaintiff is advancing an assertion in this lawsuit that is inconsistent with a position taken during previous litigation, that his position is one of fact instead of law, that his prior position was accepted by the court in the first proceeding, and that he has acted intentionally, not inadvertently. *Folio*, 134 F.3d at 1217. While Plaintiff argues that Defendant has unclean hands by creating an alleged hostile work environment [Entry #46 at 3–4], the doctrine of judicial estoppel---distinct from the concept of equitable estoppel---"is intended to protect the judicial system, rather than the litigants." *In re Coastal Plains*, 179 F.3d at 205. Therefore, application of the doctrine in this case is appropriate. *Allen*, 667 F.2d at 1166 (court should invoke the doctrine of judicial estoppel where necessary to protect the essential integrity of the judicial process); *Burnes v. Pemco Aeroplex*, 291 F.3d 1282 (11th Cir. 2002) (plaintiff judicially estopped from asserting employment discrimination claims against employer because of failure to disclose claim in bankruptcy proceedings); *Chandler*, 35 F.Supp.2d 861 (same).

16

IV.  Conclusion and Recommendation

Based on the foregoing, the undersigned recommends that the court find Plaintiff lacks standing to maintain this action, or alternatively, exercise its discretion to invoke the doctrine of judicial estoppel.  The undersigned recommends that the court grant Defendant's motion for summary judgment [Entry #40], dismissing this case, with prejudice.  If this recommendation is accepted, the pending motion to dismiss and corresponding R&R will be rendered moot.[3]

IT IS SO RECOMMENDED.

January 25, 2013                                               Shiva V. Hodges
Columbia, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[3]  Should the court reject the recommendation to grant summary judgment, it should reinstate an objection period for the pending R&R [Entry #38] on Defendant's partial motion to dismiss [Entry #25].

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).